UNITED STATES DISTRICT
COURT EASTERN DISTRICT OF
NEW YORK
-------------------------------------------------------
RICHARD VERGA,

                Plaintiff,

        -against-

EMERGENCY AMBULANCE SERVICE,
INC. A/K/A EMERGENCY AMBULANCE
SERVICE CORP. A/K/A EMERGENCY
AMBULANCE SERVICE CARE &
COMFORT AMBULETTE and KELLY
LINDEN,

                Defendants.
-----------------------------------------------------------X

**MEMORANDUM AND ORDER**
12-CV-1199 (DRH)(ARL)

**A P P E A R A N C E S :**

**For the Plaintiff:**
**GOLD, STEWART, KRAVATZ BENES & STONE, L.L.P.**
1025 Old Country Road, Suite 301
Westbury, NY 11590
  By:   Christopher J. Benes, Esq.
          Jeffrey B. Gold, Esq.
          Melissa Beth Levine, Esq.

**For the Defendants:**
**COOK, NETTER, CLOONAN, KURTZ & MURPHY, P.C.**
85 Main Street
PO Box 3939
Kingston, NY 12402
  By:   Robert D. Cook, Esq.

**HURLEY, Senior District Judge:**

     Plaintiff Richard Verga ("plaintiff") commenced this action against defendants Emergency Ambulance Service, Inc. ("EAS") and Kelly Linden ("Linden") (collectively "defendants") asserting claims of retaliatory employment practices in violation of 42 U.S.C. § 2000(e) ("Title VII"), 42 U.S.C. § 1981, and New York State Human Rights Law

1

("NYSHRL"), Executive Law § 296, and claims for unpaid wages pursuant to New York Labor Law Sections 191 and 195. Presently before the Court is defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56") seeking dismissal of the Complaint. For the reasons set forth below, the defendants' motion is denied.

## BACKGROUND

The following facts, drawn from the defendants' Local Rule 56.1 statement[1] and the parties' submissions are undisputed unless otherwise noted.

At all relevant times, plaintiff was employed by EAS as a New York State Emergency medical Technician ("EMT"). At all relevant times, Bruce Hydock ("Hydock") was employed by EAS as a New York State Advanced Emergency Technician – Paramedic ("paramedic"). On April, 23, 2010, in the course of plaintiff's work assignment he "was partnered" with Hydock requiring plaintiff to ride in an ambulance with Hydock. According to plaintiff, throughout the day Hydock "kept making comments to [plaintiff] that he wanted to have a sexual relationship with [plaintiff]," who repeatedly expressed that he was not interested.

---

[1] Local Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York requires a party moving for summary judgment to submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Rule 56.1(a). Additionally, the rule requires a party opposing a motion for summary judgment to submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Local Rule 56.1(b). Although defendants, the moving party, have submitted the required statement, plaintiff, the non-moving party, has not submitted a responding statement in compliance with this rule. While the Court could deem each of defendants' factual statements admitted based upon plaintiff's failure to comply with Local Rule 56.1(b), *see* Local Rule 56.1(c), the Court will, in the exercise of its discretion, consider not only the uncontested facts set forth in defendants' Local Rule 56.1 Statement, but also the other facts contained in the record. *See Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 73 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules.").

(Pl.'s Aff. ¶ 18.) At approximately 11:30 a.m., plaintiff and Hydock were seated in the front seat of the company ambulance, when Hydock touched plaintiff on the inner thigh near the crotch for approximately twenty seconds. Immediately upon returning to EAS offices, plaintiff reported the incident to management and provided management with an incident report. On that same evening, plaintiff made an entry on his Facebook page where he threatened "the mother fucker who thought today was a joke" by stating that he would "knock [that individual's] fucking teeth out, break [his or her] jaw [and] every bone in [his or her] left arm."[2]

Linden, the Human Resource Director at EAS, investigated plaintiff's claim and required Hydock to apologize to the plaintiff and to undergo sexual harassment training. Based on the content of plaintiff's Facebook message and interviews with other employees who expressed concern about plaintiff's behavior, Linden also determined that plaintiff should attend a Violence in the Workplace training seminar and prepared a letter requesting plaintiff's consent to participation in that training. The letter also stated that the "situation [was] being dealt with and handled by the Director of Operations and the Director of Human Resources." (Letter dated May 13, 2010 from Linden to Verga, Pl.'s Ex. 1.) Plaintiff initially signed the letter agreement, however approximately ten minutes later after speaking with his attorney, he requested that the letter be ripped up and refused to sign it. According to plaintiff, he "wanted the letter back" because after speaking with his attorney he realized that the letter asked him to acknowledge that EAS was appropriately addressing his complaint, and he felt that EAS had not addressed his complaint at all. (Pl.'s Aff. ¶ 54.) Plaintiff states that he told Linden that due to what he perceived to be a portion of the letter seeking EAS's exoneration he would not sign

---

[2] It is not clear from the record about whom plaintiff was speaking.

the letter, but would still take the anger management class. (*Id.* ¶¶ 53-55.) On May 13, 2010, plaintiff left EAS and never returned. On May 20, 2010, EAS forwarded plaintiff a letter advising that he was being terminated from employment.

*DISCUSSION*

## I. *Applicable Law and Legal Standards*

Summary judgment pursuant to Rule 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there is a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Delaware & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v.*

*U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court, in considering a summary judgment motion, must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions. *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *Id*. at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not implausible." *Id*. at 211 (citing *Matsushita*, 475 U.S. at 587).

Summary judgment is generally inappropriate where questions of the defendant's state of mind are at issue, *Gelb v. Bd. of Elections of the City of N. Y.*, 224 F.3d 149, 157 (2d Cir. 2000), and should thus be granted with caution in employment discrimination cases. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994); *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000). Nonetheless, "summary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 40 (2d Cir. 1994). "The summary

judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985). "[T]he salutary purposes of summary judgment — avoiding protracted, expensive and harassing trials — apply no less to discrimination cases than to commercial or other areas of litigation." *Id*. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo*, 22 F.3d at 1224.

## II. *Plaintiff's Title VII Retaliation Claim*

In the Complaint's first cause of action, plaintiff alleges a Title VII retaliation claim against EAS.[3] Section 704(a) of Title VII makes it unlawful to retaliate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *Deravin v. Kerik*, 335 F.3d 195, 203 (2d Cir. 2003) (citing 42 U.S.C. § 2000e-3(a)). "In order to present a prima facie case of retaliation under Title VII . . ., a plaintiff must adduce evidence sufficient to permit a rational trier of fact to find [1] that [] he engaged in protected participation or opposition under Title VII . . ., [2] that the employer was aware of this activity," and "[3] that the employer took adverse action against the plaintiff." *Kessler v. Westchester Cty. Dep't of Social Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006) (internal quotation marks and citation omitted). In addition, the Supreme Court recently clarified the causation standard required by § 704(a) stating, "a plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her

---

[3] Plaintiff's complaint alleges a Title VII claim solely against EAS. As a result, defendants' argument at Point II of its brief that individual defendants are not liable under Title VII is moot.

protected activity was a but-for cause of the alleged adverse action by the employer," as distinct from "a motivating factor," which had previously been the standard in the Second Circuit. *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013).

Claims of retaliation pursuant to Title VII are analyzed according to the burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-804 (1973). *See Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003). Once the employee has established a *prima facie* case, the employer "must proffer a legitimate, non-discriminatory reason for the adverse action. If it does so, then the burden shifts back to the [employee] to demonstrate pretext." *Slattery v. Swiss Reinsurance. Am. Corp*., 248 F.3d 87, 94-95 (2d Cir. 2001). Traditionally, courts have applied the same standards for proving retaliation under the NYSHRL that are applied under Title VII. *See Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P. C.,* 716 F.3d 10, 14 (2d Cir. 2013) ("The standards for evaluating ... retaliation claims are identical under Title VII and the NYSHRL." ).[4]

It is not disputed that plaintiff engaged in protected activity when he filed a complaint with EAS on April 23, 2010 relating to the incident with Hydock, nor is it disputed that EAS knew of this complaint. Moreover, plaintiff claims that EAS committed several adverse employment actions after he complained to EAS management including "denying [plaintiff] pay, fail[ing] to follow EAS's own rules on the matter, creating a hostile work environment

---

[4] Although "New York State Courts have yet to address the impact of the Supreme Court's recent holding in *Nassar* on the NYSHRL, nor has the Second Circuit provided ... guidance as to this issue," this Court will continue to construe the NYSHRL as requiring the same elements as Title VII. *See Dall v. St. Catherine of Siena Med. Ctr.,* 966 F. Supp. 2d 167, 192 n. 12 (E.D.N.Y. 2013) (finding that "[s]ince the NYSHRL statutory language is the same [as Title VII], and the New York Court of Appeals has consistently stated that federal Title VII standards are applied in interpreting NYSHRL, this Court will continue to interpret the standard for retaliation under NYSHRL consistent with Title VII jurisprudence, as clarified by the Supreme Court in *Nassar"*).

and then using a single isolated, rambling, non-descript Facebook posting nearly three weeks after [the] defendants were aware of it [to require plaintiff to attend a Violence in the Workplace seminar], ordering him to sign an exoneration letter for the EAS and when he refused . . . fir[ing] him." (Benes Aff. ¶ 9.) Defendants do not specifically address whether they contest that any of these actions were adverse. The only specific argument the Court could glean from defendants' papers is their contention that plaintiff has not raised a genuine issue of fact as to whether retaliation for his complaint was a but for cause of his termination pursuant to *Nassar*. Thus, the Court will address that argument as follows.

Under *Nassar,* "Title VII retaliation claims must be proved according to traditional principles of *but-for* causation ... requir[ing] proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." 133 S.Ct. at 2533. "Therefore, during the final stage of the burden shifting framework, the plaintiff must show that retaliation was a but-for cause of the adverse employment action." *Dall,* 966 F. Supp. 2d at 196. According to the Second Circuit, "[h]owever, 'but-for' causation does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Zann Kwan v. Andalex Group LLC*, 737 F.3d 834, 846 (2d Cir. 2013).

Here, the time period between plaintiff's complaint and termination is "sufficiently short to make a prima facie showing of causation indirectly through temporal proximity." *Kwan*, 737 F.3d at 845. Therefore, the burden shifts to the defendants to articulate a non-retaliatory reason for plaintiff's termination, which in this case is stated in the affidavit of Kelly Linden. According to Linden, during the investigation, he examined plaintiff's Facebook message that was posted on the night of the incident with Hydock. (Linden Aff. ¶

8

3.) Linden also interviewed employees Kerrilyn Maddox and Jeanne Petrozziello, "both [of whom] were extremely concerned about the behavior of [plaintiff]." (*Id*.) According to Linden, "after receiving the information provided by these two employees and reviewing the Facebook entry made by Mr. Verga, [he] became concerned with the safety of Bruce Hydock and all employees in the workplace," thereby reaching "the conclusion that the appropriate course of action would be to require [plaintiff] to attend a Violence in the Workplace seminar." (*Id*.) Accordingly, he presented plaintiff with a letter dated May 13, 2010 seeking plaintiff's agreement that he would participate in the seminar. (*Id*.) Moreover, Linden claims that plaintiff informed Linden that he refused to take the seminar, and plaintiff became quite agitated and "put his hand on a pair of scissors and/or shears which he was wearing on his hip," prompting Linden to call the police. (*Id*.) According to Linden, EAS terminated plaintiff "solely due to the demeanor that he exhibited after [EAS] attempted to discuss [the] incident with him, the information that was provided to us by co-employees regarding his anger issues, the information entered by Mr. Verga on his Facebook page, and his refusal to attend the Violence in the Workplace seminar." (*Id*. ¶ 4.) Moreover, defendants in their brief characterize the reason for the termination as "plaintiff's failure to sign the letter agreement to participate in the Violence in the Workplace seminar." (Defs.' Mem. in Supp. at 9.)

Having articulated this non-retaliatory motive, the burden shifts back to plaintiff to offer evidence of pretext. It is clear that in order to survive summary judgment "[w]hile temporal proximity [between the protected activity and the adverse action] alone may still be sufficient at the prima facie stage, it is not sufficient at the pretext stage." *Dall,* 966 F. Supp. 2d at 195 n.15; *see El Sayed v. Hilton Hotels Corp.,* 627 F.3d 931, 933 (2d Cir. 2010) ("The temporal proximity of events may give rise to an inference of retaliation for the purposes of

establishing a prima facie case of retaliation under Title VII, but without more, such temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext."). Still, "a plaintiff may rely on evidence comprising [his] prima facie case, including temporal proximity, together with other evidence . . . to defeat summary judgment." *Kwan*, 737 F.3d at 847. Moreover, "[t]he test for summary judgment is whether the evidence can reasonably support a verdict in plaintiff's favor." *James v. New York Racing Ass'n*, 233 F.3d 149, 157 (2d Cir. 2000).

In response to defendants' proffered non-retaliatory explanation for terminating the plaintiff, plaintiff states in his own affidavit that at the May 13 meeting, he told Linden that although he would not sign the letter he agreed to take the anger management class. (Pl.'s Aff. ¶ 55.) Further, he explains that he objected to signing the letter only because he disagreed with the language indicating that EAS had adequately dealt with his complaint. This evidence calls into question the defendants' articulated reason for terminating the plaintiff, "i.e., plaintiff's failure to sign the letter agreement to participate in the Violence in the Workplace seminar" because according to plaintiff he was willing to participate in the violence seminar. (Defs.' Mem. in Supp. at 9.) Accordingly, the matter will be left to the trier of fact to determine whether defendants' proffered reason for the plaintiff's termination was pretextual. *Kwan*, 737 F.3d at 846 ("A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employers' proffered legitimate, nonretaliatory reasons for its action."). Furthermore, plaintiff's testimony "coupled with the temporal proximity between the complaint and the termination," could lead a reasonable trier of fact to determine that

plaintiff's harassment complaint was a but-for cause of his termination. *Id*. at 847.[5]

### III. Leave to Amend

Plaintiff requests leave to amend the pleadings to add a claim for hostile work environment and discrimination. Defendants oppose this request as it is beyond the August 23, 2012 deadline for commencement of motion practice to amend the pleadings that was set forth in the Pretrial Scheduling Order. (*See* Docket Entry 6.) This Circuit has held that "despite the lenient standard of Rule 15(a) [governing the amendment of pleadings], a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause." *Parker v. Columbia Pictures Inds.*, 204 F.3d 326, 340 (2d Cir. 2000). Defendants are correct in that plaintiff's request was made over a year past the scheduling order deadline. Moreover, discovery in this case has concluded and the case has been deemed ready for trial. (*See* Order of Jul. 30, 2013.) Furthermore, plaintiff has not demonstrated any good cause for his failure to seek leave to amend in compliance with the scheduling deadlines set forth by Magistrate Judge Lindsay. As a result, plaintiff's request for leave to amend the complaint is denied.

### *CONCLUSION*

For the foregoing reasons, defendants' motion for summary judgment is denied.

**SO ORDERED.**

Dated: Central Islip, New York
November 18, 2014

/s/
Denis R. Hurley
United States District Judge

---

[5] Though defendants seek to dismiss the entire complaint (Defs.' Mem. in Supp. at 14), they have not provided the Court with any specific argument that plaintiff's § 1981 and New York Labor Law claims should be dismissed.